**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCIA GORDON and ROBERT** | : | **CIVIL ACTION** |
| **CORCORAN,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | **NO. 08-4682** |
| | : | |
| **EAST GOSHEN TOWNSHIP, JUDGE** | : | |
| **HOWARD F. RILEY, JR., Individually** | : | |
| **and in Official Capacity as Chester County** | : | |
| **(PA) Common Pleas Court Judge, and** | : | |
| **MARGARET M. YOKEMICK,** | : | |
| **Individually and in Official Capacity as** | : | |
| **Chester County (PA) Common Pleas** | : | |
| **Court Administrator,** | : | |
| **Defendants.** | : | |

**DuBOIS, J.**                                                      **JANUARY 13, 2009**

**M E M O R A N D U M**

**I.      INTRODUCTION**

Presently before the Court are Plaintiffs' Motion for Emergency Temporary Restraining

Order (Document No. 2, filed September 29, 2008); Response of Defendant East Goshen

Township to Motion for a Temporary Restraining Order and Motion to Dismiss Plaintiffs'

Request for a Permanent Injunction (Document No. 9, filed October 29, 2008); and Judicial

Defendants' Response to Plaintiffs' Motion for a Temporary Restraining Order/Request for a

Permanent Injunction and Judicial Defendants' Motion to Dismiss Plaintiffs' Complaint

(Document Nos. 12 and 13, filed November 14, 2008).  Additional briefing from the parties is

also before the Court:  Plaintiffs' Memorandum of Law on Rooker-Feldman Jurisdiction and

Pullman Abstention (Document No. 16, filed December 2, 2008); and Defendant East Goshen

Township's Response to Plaintiffs' Memorandum of Law on the Applicability of <u>Rooker-Feldman</u> Jurisdiction and <u>Pullman</u> Abstention Doctrines (Document No. 19, filed December 10, 2008).

For the reasons set forth below, the Court grants Judicial Defendants' Motion to Dismiss Plaintiffs' Complaint on the ground that the case is moot, and thus this Court lacks jurisdiction. Pursuant to the doctrine announced in <u>Railroad Commission of Texas v. Pullman Company</u>, 312 U.S. 496 (1941), the Court abstains from adjudicating plaintiffs' claims against defendant East Goshen Township and defendant East Goshen Township's Motion to Dismiss Plaintiffs' Request for a Permanent Injunction.  In view of these rulings, Plaintiffs' Motion for Emergency Temporary Restraining Order is denied as moot.

## II.    BACKGROUND

On August 4, 2008, the Board of Supervisors of East Goshen Township, located in Chester County, Pennsylvania, enacted Resolution 08-50 ("Resolution"), which adopted and implemented the East Goshen Township Open Space Deer Hunt Reduction Initiative ("Initiative") dated July 19, 2008.  East Goshen Twp., Pa., Resolution 08-50 (Aug. 4, 2008).  The Initiative's goal is "to return the deer population size in the township to its 1995 level within 10 years" by allowing regulated bow hunting of deer in certain Township open spaces.  East Goshen Township Open Space Deer Hunt Reduction Initiative 4–7 (July 19, 2008), <u>available at</u> http://eastgoshen.org/_documents/2008-07-19%202008-2009%20EGT%20Open%20Space%20Hunting%20Program%20(3).pdf.  Also on August 4, 2008, the Board of Supervisors enacted Ordinance No. 129-E-08 ("Ordinance"), amending the Code of the Township of East Goshen to set aside areas of Township-owned land for deer hunting pursuant to the Initiative.  East Goshen

2

Twp., Pa., Code § 163-3(N) (1999) (effective August 9, 2008).

On September 3, 2008, instant plaintiffs Marcia Gordon and Robert Corcoran filed a lawsuit in the Chester County Court of Common Pleas challenging the constitutionality of the Initiative and the Ordinance and seeking a preliminary injunction enjoining the implementation of the Initiative.  Complaint at 1, 27, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Sept. 3, 2008).  Plaintiffs alleged that the adoption of the Initiative violated provisions of the United States Constitution, the Pennsylvania Constitution, and laws of the Commonwealth of Pennsylvania. Id. at 23–26.  The case was assigned to the Honorable Howard F. Riley, Jr.  See Praecipe for Determination, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Sept. 23, 2008).  On September 16, 2008, plaintiffs filed an Application for Special Emergency Ex Parte Injunctive Relief to immediately stay the deer hunt before its scheduled date of commencement, September 20, 2008. Application for Special Emergency Ex Parte Injunctive Relief, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Sept. 16, 2008).  The same day, plaintiffs were informed by Judge Riley's secretary that the Judge "was unable to deal with Plaintiffs' requests until September 22 because he was on vacation and court facilities were being moved from one building to another."  (Compl. ¶ 38 (Doc. No. 1, filed Sept. 29, 2008).)

On September 30, 2008, plaintiffs' case was assigned to the Honorable Robert J. Shenkin of the Chester County Court of Common Pleas.  Docket, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P., retrieved Nov. 18, 2008).  Judge Shenkin was presiding over another case challenging the same Initiative—albeit on different grounds—that had been filed on September 2, 2008 by Leo Sinclair, Ellen Sinclair, Robert

Bernhard, and Ellen Bernhard on behalf of themselves and others similarly situated.  Complaint ¶¶ 25–27, Sinclair v. East Goshen Twp. Bd. of Supervisors, No. 08-09552 (Chester County Ct. C.P. Sept. 2, 2008).  On September 25, 2008, in a brief Order, Judge Shenkin had denied the Sinclair plaintiffs' Petition for Preliminary Injunction.  Order of September 25, 2008, Sinclair v. East Goshen Twp. Bd. of Supervisors, No. 08-09552 (Chester County Ct. C.P. Sept. 25, 2008). Judge Shenkin denied instant plaintiffs' Application for Special Emergency Ex Parte Injunctive Relief in a summary Order on September 30, 2008.  Order of September 30, 2008, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Sept. 30, 2008). Turning to plaintiffs' Special Application and Petition for Stay and/or Preliminary Injunctive Relief ("Petition"), Judge Shenkin ordered respondent East Goshen Township Board of Supervisors to show cause why the requested relief should not be granted and scheduled a hearing on the Petition for October 10, 2008.

Meanwhile, on September 29, 2008, after Judge Shenkin denied the Sinclair plaintiffs' Petition but before any ruling in instant plaintiffs' state-court case, plaintiffs filed a federal Complaint in this Court challenging the legality of the Ordinance on the same grounds raised in their state-court Complaint.  (Compl. ¶¶ 61–74.)  In addition to East Goshen Township, plaintiffs included as defendants Judge Howard F. Riley, Jr., individually and in his official capacity as a Chester County Common Pleas Court Judge, and Margaret M. Yokemick, individually and in her official capacity as a Chester County Common Pleas Court Administrator (hereinafter, collectively, "judicial defendants").  Plaintiffs allege that judicial defendants deprived them of their "First Amendment right of access to the courts . . . ."  (Compl. ¶ 40.)  In the Complaint, plaintiffs seek declaratory and injunctive relief.  (Compl. ¶¶ 21–23.)  Additionally, plaintiffs filed

4

a Motion for Temporary Restraining Order ("TRO") to enjoin East Goshen Township from continuing the deer hunt and enjoin judicial defendants from "hindering Plaintiffs' access to the Chester County Court of Common Pleas . . . ."  (Mot. for TRO 1 (Doc. No. 2, filed Sept. 29, 2008).)

Continuing their state-court litigation, on October 6, 2008, plaintiffs filed a Notice of Appeal in the Commonwealth Court of Pennsylvania, appealing from Judge Shenkin's Order of September 30, 2008 denying plaintiffs' request for emergency relief.  Notice of Appeal, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Oct. 6, 2008).  On October 10, 2008, because plaintiffs failed to appear for the hearing before Judge Shenkin on that date, Judge Shenkin denied their Special Application and Petition for Stay and/or Preliminary Injunctive Relief.  Order of October 10, 2008, Ref. No. 41, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Oct. 10, 2008).  He also directed plaintiffs to file and serve a concise statement of errors complained of on appeal by October 31, 2008.  Order of October 10, 2008, Ref. No. 24, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Oct. 10, 2008).  Plaintiffs filed such a statement on October 29, 2008.  Plaintiffs' Rule 1925(b) Concise Statement of Errors Complained of on Appeal, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 08-09605 (Chester County Ct. C.P. Oct. 29, 2008).  On October 14, 2008, plaintiffs filed a Motion for Stay Ancillary to Appeal in the Commonwealth Court of Pennsylvania; it was denied by Judge Barry F. Feudale on November 10, 2008.  Motion for Stay Ancillary to Appeal, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 1939 C.D. 2008 (Commw. Ct. Pa. Oct. 14, 2008); Order of November 10, 2008, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 1939 C.D. 2008

(Commw. Ct. Pa. Nov. 10, 2008).

In this Court, defendant East Goshen Township and judicial defendants filed motions to dismiss on October 29, 2008 and November 4, 2008, respectively.  (Def. East Goshen Twp.'s Mot. to Dismiss Pls.' Req. for Permanent Inj. (Doc. No. 9, filed Oct. 29, 2008); Judicial Defs.' Mot. to Dismiss Pls.' Compl. (Doc. Nos. 12 & 13, filed Nov. 14, 2008).)

## III.    JUDICIAL DEFENDANTS

### A.    Legal Standard—Mootness and Federal Rule of Civil Procedure 12(b)(1)

The Supreme Court has explained that "'[w]ithout jurisdiction the court cannot proceed at all in any cause.'"  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).  Article III of the Constitution of the United States provides that a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided.  See, e.g., Golden v. Zwickler, 394 U.S. 103, 108 (1969).  A case is moot when the issues are no longer live or a plaintiff can no longer benefit from the relief requested.  Murphy v. Hunt, 455 U.S. 478, 481 (1982).

Mootness is "'the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)); see also Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 385 n.11 (3d Cir. 1999) ("Both standing and mootness involve the consideration of whether an Article III case or controversy exists.").  "Article III requires that a plaintiff's claim be live not just when he first brings the suit but throughout the entire litigation, and once the controversy ceases to exist the

6

court must dismiss the case for lack of jurisdiction." Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992) (citations omitted); see also United States v. Virgin Islands, 363 F.3d 276, 285 (3d Cir. 2004) (citation omitted) ("If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it.").

The Third Circuit has noted that "there is no precise test for ascertaining with precision whether a particular claim has become moot. . . . Such a determination therefore becomes an intensely factual inquiry, guided primarily by pragmatic considerations." Int'l Broth. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987) (internal citations and quotation marks omitted). In undertaking such an inquiry, a court must consider that "'[t]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'" Id. (quoting Jersey Central Power & Light Co. v. State of New Jersey, 772 F.2d 35, 39 (3d Cir. 1985)) (further citation omitted).

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter . . . ." Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion, the Court first must determine whether the motion attacks the complaint on its face or on its facts. Carpet Group Int'l v. Oriental Rug Imps. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject matter jurisdiction or contains defects in the jurisdictional allegations. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1350, at 147–54 (3d ed. 2004). As with a Rule 12(b)(6) motion, a court evaluating a facial challenge must accept the allegations in

7

the complaint as true, and disposition of the motion becomes purely a legal question.  Gould

Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  In reviewing a facial attack, a

court may rely on documents referenced within the complaint and attached thereto but must view

them in the light most favorable to the nonmoving party.  See id. at 176 & n.6; Pension Benefit

Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

On the other hand, in a factual attack, "no presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims."  Mortensen, 549 F.2d at 891.  In

resolving a factual challenge under Rule 12(b)(1), "the court may consider and weigh evidence

outside the pleadings to determine if it has jurisdiction."  Gould Elec., 220 F.3d at 178 (citing

Mortensen, 549 F.2d at 891).  A Rule 12(b)(1) argument that a case is moot due to events that

occurred after the filing of the complaint is a factual attack on jurisdiction.

**B.      Discussion**

In this case, judicial defendants do not raise the issue of mootness in their Motion to

Dismiss.  A federal court, however, may raise it *sua sponte* as the court is prohibited from issuing

an advisory opinion.  See North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("Although neither

party has urged that this case is moot, resolution of the question is essential if federal courts are

to function within their constitutional sphere of authority.")

The gravamen of plaintiffs' cause of action against judicial defendants is that judicial

defendants deprived plaintiffs of "First Amendment rights to 'petition the government' and of

access to the courts . . . .  The actions and omissions of [judicial] Defendants completely

precluded the possibility of any relief in state court."  (Compl. ¶ 75.)  Plaintiffs seek "federal

8

relief for deprivation of federal rights," although the precise type of relief sought is not specified. (Id.)  In the Prayer for Relief contained in the Complaint, plaintiffs request an emergency temporary restraining order "[e]njoining [judicial defendants] from hindering Plaintiffs' access to the Chester County Court of Common Pleas to have Plaintiffs' issues heard and decided through orderly procedures . . . ."  (Id. at 21.)  Plaintiffs also make a general request for permanent injunctive relief—"[u]nless enjoined by this Court, the Township and other authorized persons will continue to infringe the Plaintiffs' and the public's constitutional rights, and thereby cause irreparable injury."  (Id. at 21–22.)  While plaintiffs are currently represented by counsel, when plaintiffs filed their Complaint, they were *pro se*.  The Court thus reads the Complaint generously and construes it as seeking, in addition to a temporary restraining order, a permanent injunction against judicial defendants.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers").

Plaintiffs' cause of action against judicial defendants epitomizes the mootness doctrine. In their federal Complaint, filed on September 29, 2008, plaintiffs allege that judicial defendants blocked their access to state court, preventing state-court review of their claims.  (Compl. ¶¶ 37–44.)  As detailed *supra*, subsequent to the filing of their federal Complaint, plaintiffs' claims were reviewed in state court, negating their concern that judicial defendants were blocking access.  On September 30, 2008, for example, Judge Shenkin denied plaintiffs' request for emergency relief and scheduled a hearing on plaintiffs' petition for injunctive relief for October 10, 2008.  Plaintiffs have also been able to access appellate review in the Commonwealth Court of Pennsylvania.  See Docket, Gordon v. East Goshen Twp. Bd. of Supervisors, No. 1939 C.D. 2008 (Commw. Ct. Pa., retrieved Nov. 14, 2008).  Thus, whatever conduct of judicial defendants

9

led to the filing of the lawsuit, it is clear that judicial defendants are not presently blocking access to the state court.  As the Third Circuit held in <u>Lusardi v. Xerox Corporation</u>, "Article III requires that a plaintiff's claim be live not just when he first brings the suit but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction."  975 F.2d 964, 974 (3d Cir. 1992) (citations omitted).  As plaintiffs have been able to access state court subsequent to the filing of their federal Complaint, the controversy between plaintiffs and judicial defendants has "cease[d] to exist," and this Court must "dismiss the case for lack of jurisdiction" under Rule 12(b)(1).

Plaintiffs no longer have a "legally cognizable interest" in the result of their cause of action against judicial defendants.  <u>See</u> <u>Murphy v. Hunt</u>, 455 U.S. 478, 481 (1982).  Plaintiffs have requested only injunctive relief against judicial defendants; they have not prayed for damages.  Such prospective relief is unwarranted, however, as given the posture of the state-court proceedings, judicial defendants are not in a position to interfere with plaintiffs' access to state court.  This lack of "any occasion for meaningful relief" due to "changes in circumstances that prevailed at the beginning of the litigation" renders plaintiffs' cause of action against judicial defendants moot.  <u>Int'l Broth. of Boilermakers v. Kelly</u>, 815 F.2d 912, 915 (3d Cir. 1987) (internal citations omitted).[1]

---

[1] The exception to the mootness doctrine for voluntary cessation of the challenged practice is inapplicable here.  The standard for "determining whether a case has been mooted by the defendant's voluntary conduct is stringent:  A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.</u>, 528 U.S. 167, 170 (2000) (citing <u>United States v. Concentrated Phosphate Exp. Ass'n</u>, 393 U.S. 199, 203 (1968)).  The subsequent state-court action in the instant case meets this "stringent" standard.  As the litigation in state court has progressed—with the transfer of plaintiffs' original case to another judge and an appeal underway—there is little or no likelihood that any alleged misconduct could "reasonably be

Accordingly, the Court concludes that plaintiffs' cause of action against judicial defendants is moot and grants judicial defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  In light of this ruling, the Court declines to rule on the other issues raised by the parties' filings, including, *inter alia*, judicial immunity, the Eleventh Amendment, preclusion, and Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs' Motion for Emergency Temporary Restraining Order against judicial defendants is also denied as moot.

## IV. DEFENDANT EAST GOSHEN TOWNSHIP

### A. The Rooker-Feldman Doctrine

#### 1. Standard of Review

Defendant East Goshen Township argues that the Rooker-Feldman doctrine bars the Court from adjudicating the instant matter.  (Def. East Goshen Twp.'s Mot. to Dismiss 4 (Doc. No. 9, filed Oct. 29, 2008); Def. East Goshen Twp.'s Resp. to Pls.' Mem. of Law 4–10 (Doc. No. 19, filed Dec. 10, 2008).)  This argument addresses the issue of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter . . . ."  Fed. R. Civ. P. 12(b)(1).  Plaintiff "bears the burden of showing that the case is properly before the Court at all stages of the litigation."  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993) (citation omitted).

As discussed in Part III.A, *supra*, in evaluating a Rule 12(b)(1) motion, the Court first must determine whether the motion attacks the complaint on its face or on its facts.  Carpet Group Int'l v. Oriental Rug Imps. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

---

expected to recur."

11

In this case, defendant East Goshen Township's <u>Rooker-Feldman</u> argument attacks plaintiffs' Complaint on the facts.  <u>See</u> <u>Jiricko v. Bennett, Bricklin & Satlzburg, LLP</u>, 321 F.Supp.2d 636, 640 (E.D. Pa. 2004) (holding that Rule 12(b)(1) motion challenging subject matter jurisdiction under <u>Rooker-Feldman</u> is an "in fact" jurisdictional challenge).  Thus, this Court may consider evidence outside the pleadings to determine whether the Court has subject matter jurisdiction over plaintiffs' claims.

The <u>Rooker-Feldman</u> doctrine originated in, and takes its name from, two Supreme Court cases—<u>Rooker v. Fidelity Trust Company</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983)—which held that federal district courts may not sit as appellate courts to review state-court judgments.  "Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction.  Plaintiffs in <u>Rooker</u> and <u>Feldman</u> had litigated and lost in state court.  Their federal complaints . . . essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments."  <u>Exxon Mobil Corp. v. Saudi Basic Indus.</u>, 544 U.S. 280, 283 (2005).  The <u>Rooker</u> and <u>Feldman</u> Courts made clear that federal district courts lack subject matter jurisdiction to hear appeals of state-court judgments.  <u>Id.</u> at 283–84.  The Supreme Court, however, has cautioned that <u>Rooker-Feldman</u> is a "narrow doctrine."  <u>Lance v. Dennis</u>, 546 U.S. 459, 464 (2006).  The lower federal courts are not "divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court."  <u>Turner v. Crawford Square Apartments III, L.P.</u>, 449 F.3d 542, 547 (3d Cir. 2006).

In a recent Supreme Court case clarifying the scope of the <u>Rooker-Feldman</u> doctrine, the Court held that the doctrine is "confined to cases of the kind from which the doctrine acquired its

name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting review and rejection of those judgments."  Exxon Mobil, 544 U.S. at 284.  The Exxon Mobil Court held that the Rooker-Feldman doctrine applies in the "limited circumstances" in which a "losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  Id. at 291; see also Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005) ("If federal litigation is initiated *before* state proceedings have ended, then—even if the federal plaintiff expects to lose in state court and hopes to win in federal court—the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction.") (emphasis in original); Dornheim v. Sholes, 430 F.3d 919, 923 (8th Cir. 2005) ("Exxon Mobil makes clear that the Rooker/Feldman doctrine precludes federal district court jurisdiction only if the federal suit is commenced after the state court proceedings have ended.") (citation omitted).  The Exxon-Mobil Court also held that "[w]hen there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court."  Exxon Mobil, 544 U.S. at 292.  The federal court's concurrent jurisdiction does not vanish once the state court reaches a judgment; instead, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."  Id. at 293.

After Exxon-Mobil, the Third Circuit has interpreted the Rooker-Feldman doctrine as barring the lower federal courts "from entertaining an action . . . if the relief requested effectively would reverse a state court decision or void its ruling."  Taliaferro v. Darby Twp. Zoning Bd.,

13

458 F.3d 181, 192 (3d Cir. 2006) (citation omitted).  Accordingly, the <u>Rooker-Feldman</u> doctrine creates a jurisdictional bar where the federal claim was "actually litigated" in state court or where the federal claim is "inextricably intertwined" with a previous state-court judgment.  <u>Id.</u> at 192–93.

###### 2.    Discussion

As noted above, plaintiffs filed their federal Complaint on September 29, 2008.  At that time, the state court had not yet reached any decision in the pending litigation.  In fact, the only action concerning plaintiffs' state-court case occurred *after* plaintiffs had filed their federal Complaint.  Thus, plaintiffs federal claims were not "actually litigated" in state court before the commencement of the instant federal proceedings.  Moreover, without a previous judgment in the state-court proceedings, plaintiffs' federal claims are not "inextricably intertwined" such that a judgment by this Court "would reverse a state court decision or void its ruling."  <u>Taliaferro</u>, 458 F.3d at 192.  As the state court had not yet acted in plaintiffs' case, plaintiffs cannot fairly be characterized as "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting review and rejection of those judgments."  <u>Exxon Mobil</u>, 544 U.S. at 284.  Accordingly, the "narrow" <u>Rooker-Feldman</u> doctrine does not operate to preclude subject matter jurisdiction in the instant case.

Defendant East Goshen Township's contention that the <u>Rooker-Feldman</u> doctrine applies because instant plaintiffs were in privity with the state-court plaintiffs in the <u>Sinclair</u> case lacks merit.  The <u>Rooker-Feldman</u> doctrine may only be invoked against individuals who were parties or privies to the underlying state-court proceedings.  <u>Lance</u>, 546 U.S. at 464; <u>see also</u> <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1006 (1994) ("But the invocation of <u>Rooker/Feldman</u> is just as inapt

14

here, for unlike Rooker or Feldman, the United States was not a party in the state court."); Valenti v. Mitchell, 962 F.2d 288, 297 (3d Cir. 1992) ("We have found no authority which would extend the Rooker-Feldman doctrine to persons not parties to the proceedings before the state supreme court . . . .").

As discussed above, on September 25, 2008, Judge Shenkin of the Chester County Court of Common Pleas denied a request to preliminarily enjoin the East Goshen Township Deer Management Program in the case filed by Leo and Ellen Sinclair on behalf of themselves and all others similarly situated.  The instant plaintiffs were plainly not named parties to that lawsuit. Defendant argues that instant plaintiffs were nonetheless privies to that lawsuit, as the Sinclair plaintiffs were acting in a representative capacity, a relationship "long held to fall within the concept of privity . . . ."  (Def. East Goshen Twp.'s Resp. to Pls.' Mem. of Law 10 (citing Marran v. Marran, 376 F.3d 143, 151 (3d Cir. 2004)).)  Yet simply titling a complaint as brought on behalf of all others similarly situated does not create privity.

The Restatement (Second) of Judgments enumerates five relationships that can bind "[a] person who is not a party to an action but who is represented by a party . . . ."  Restatement (Second) of Judgments § 41 (1982).

> A person is represented by a party who is:
> (a) The trustee of an estate or interest of which the person is a beneficiary; or
> (b) Invested by the person with authority to represent him in an action; or
> (c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or
> (d) An official or agency invested by law with authority to represent the person's interests; or
> (e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.

Id.  None of these relationships is present in the instant case.  While the Sinclair plaintiffs

purported to represent all others similarly situated, they did not seek nor receive certification as class representatives by the state court.  Thus, instant plaintiffs were not parties nor privies to the Sinclair case, and the Rooker-Feldman doctrine does not bar this Court's exercise of jurisdiction.

**B.**      **Younger Abstention**

**1.**      **Standard of Review**

In Younger v. Harris, 401 U.S. 37, 41 (1971), the Supreme Court held that a federal court could not enjoin state criminal proceedings enforcing state law on the ground that the underlying state law was unconstitutional.  See also Samuels v. Mackell, 401 U.S. 66, 69 (1971) (holding that Younger applies to declaratory judgments).  The Court soon expanded the Younger holding to prohibit federal injunctions of certain civil proceedings which were quasi-criminal or in aid of state courts' authority to enforce their orders.  See, e.g., Huffman v. Pursue, Ltd., 420 U.S. 592, 604–05 (1975) (applying Younger to state nuisance proceedings); Juidice v. Vail, 430 U.S. 327, 334–36 (1977) (applying Younger to contempt proceedings); Trainor v. Hernandez, 431 U.S. 434, 444–46 (1977) (applying Younger to state civil enforcement proceedings to recover fraudulently-obtained welfare payments).

Subsequently, in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432 (1982), the Court ruled that district courts should only abstain under Younger if:  (1) there are ongoing state proceedings of a judicial nature; (2) these proceedings implicate important state interests; and (3) the state proceedings offer adequate opportunity to raise federal claims.  See also Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 408 (3d Cir. 2005) (applying the three-prong test of Middlesex County).  In Pennzoil v. Texaco, Inc., 481 U.S. 1 (1987), however, the Court cautioned that it did "not hold that Younger abstention is always

16

appropriate whenever a civil proceeding is pending in a state court.  Rather . . .  we rely on the State's interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory.'"  Id. at 14 n.12 (citation omitted).

Amplifying these limitations, the Third Circuit and district courts in the Third Circuit have consistently held that district courts should only abstain under Younger where the state proceedings are "coercive" and not merely "remedial."  See O'Neill v. City of Philadelphia, 32 F.3d 785, 791 n.13 (3d Cir. 1994) (citing Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 n.2 (1986)); see also Wyatt v. Keating, 130 Fed. Appx. 511, 514 (3d Cir. 2005) (non-precedential); Smolow v. Hafer, 353 F. Supp. 2d 561, 572 (E.D. Pa. 2005) (DuBois, J.); Antonelli v. New Jersey, 310 F. Supp. 2d 700, 711–12 (D.N.J. 2004); Francis v. Springfield Twp., No. 00-6330, 2002 WL 922110, at *4 (E.D. Pa. May 1, 2002) (DuBois, J.); Cohen v. Twp. of Cheltenham, 174 F. Supp. 2d 307, 318–19 (E.D. Pa. 2001) (DuBois, J.); Gentlemen's Retreat, Inc. v. City of Philadelphia, 109 F. Supp. 2d 374, 379 n.5 (E.D. Pa. 2000) (Robreno, J.); Remed Recovery Care Ctrs. v. Twp. of Worcester, No. 98-1799, 1998 WL 437272, at *2–3 (E.D. Pa. July 30, 1998) (Shapiro, J.); Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp., 996 F. Supp. 409, 432 (E.D. Pa. 1998) (Orlofsky, J.).  The Remed court defined the dichotomy between remedial and coercive proceedings thusly:  "In remedial state proceedings, the plaintiff is attempting in both state and federal courts to vindicate a wrong inflicted by the state; in coercive state proceedings, the federal plaintiff is the state court defendant, and the state proceedings were initiated to enforce a state law."  ReMed, 1998 WL 437272, at *3 (citations omitted).

2.      **Discussion**

As noted above, plaintiffs brought their state-court action to challenge the legality of defendant East Goshen Township's Open Space Deer Hunt Reduction Initiative.  These state proceedings do not resemble those coercive proceedings in which the Supreme Court has upheld Younger abstention.  To the contrary, plaintiffs' state action falls squarely in the remedial category.

Defendant East Goshen Township argues that Younger abstention is appropriate because the three requirements for Younger abstention in civil cases, as established by the Supreme Court in Middlesex County, have been met.  Even assuming *arguendo* the correctness of defendant's assertion, defendant fails to argue that the state-court proceedings in the instant case are coercive rather than remedial, which courts in the Third Circuit have held is also a necessary prerequisite for Younger abstention.  "Even if these three criteria have been met, Younger abstention is still inappropriate if the state proceedings are 'remedial' rather than 'coercive.'"  Remed, 1998 WL 437272, at *2 (citations omitted).

Applying the Remed court's definition of coercive and remedial state-court suits, the state-court proceedings in the instant case are clearly remedial.  The state-court proceedings were initiated by plaintiffs to *enjoin* the enforcement of the Initiative, not by the government to *enforce* the Initiative against plaintiffs.  Given the remedial nature of this action, this Court declines defendant's request to abstain from adjudicating the federal claims under Younger on the ground that plaintiffs' state case is a remedial action which is insufficient to warrant Younger abstention.

C.   **Colorado River** Abstention

   1.   **Standard of Review**

In Colorado River Water Conservation District v. United States, 424 U.S. 800, 818

(1976), the Supreme Court held that "exceptional" circumstances may "permit[] the dismissal of

a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial

administration . . . ."  As the doctrine of Colorado River abstention has developed, it has

remained a narrow exception to federal district courts' "virtually unflagging obligation . . . to

exercise the jurisdiction given them."  Id. at 817; see also Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp., 460 U.S. 1, 18 (1983) (requiring "exceptional circumstances" to justify

the district court's stay); IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298,

305 (3d Cir. 2006) ("Federal district courts may abstain from hearing cases and controversies

only under 'exceptional circumstances where the order to the parties to repair to state court

would clearly serve an important countervailing interest.'") (citing Colorado River, 424 U.S. at

813); Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997) ("[I]n Colorado River, the Supreme

Court recognized that there are certain extremely limited circumstances in which a federal court

may defer to pending state court proceedings . . . .").  A district court may only exercise its

discretion and dismiss an action in favor of concurrent state proceedings under the limited

conditions prescribed by the Supreme Court in Colorado River and Moses Cone.  Ingersoll-Rand

Fin. Corp. v. Callison, 844 F.2d 133, 136 (3d Cir. 1988).  The standard established by the

Supreme Court is referred to as the "exceptional circumstances test."

   Although the Supreme Court has noted that there is no "hard and fast rule" for dismissals

of this type, it has listed six factors relevant to the decision.  Moses Cone, 460 U.S. at 15.  These

factors are:  (1) the assumption of jurisdiction by either court over property; (2) the

inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) the order in which

the courts obtained jurisdiction; (5) the forum with the substantive law that governs the merits of

the litigation; and (6) the adequacy of the state forum to protect the parties' rights.  McMurray v.

De Vink, 27 Fed. Appx. 88, 91 (3d Cir. 2002) (non-precedential); Rycoline Prods., Inc. v. C&W

Unlimited, 109 F.3d 883, 890 (3d Cir. 1997).  The first four factors were developed in Colorado

River, and the last two factors were developed in Moses Cone.  McMurray, 27 Fed. Appx. at 91.

While the Supreme Court has enumerated six factors, "the decision whether to dismiss a federal

action because of parallel state-court litigation does not rest on a mechanical checklist, but on a

careful balancing of the important factors as they apply in a given case, with the balance heavily

weighted in favor of the exercise of jurisdiction."  Moses Cone, 460 U.S. at 16.

　　　Before applying these six factors, the Court must consider a threshold question whether

the two actions are parallel proceedings—that is, whether the federal action presents the same

parties and the same issues as are presented in the state-court proceeding.  IFC Interconsult, 438

F.3d at 306 ("The threshold requirement for a district court to even entertain abstention is a

contemporaneous parallel judicial proceeding."); Ryan, 115 F.3d at 196.  "For judicial

proceedings to be parallel, there must be identities of parties, claims, and time."  IFC

Interconsult, 438 F.3d at 306.  The Third Circuit, however, has "never required complete identity

of parties for abstention."  Id.

　　　　　**2.**　　**Discussion**

　　　Beginning with the threshold inquiry, the Court concludes that the state and federal

proceedings at issue are parallel.  Plaintiffs' federal Complaint asserts the same causes of action

as their state Complaint, with the addition of a cause of action against judicial defendants.  Given that the Court has dismissed plaintiffs' cause of action against judicial defendants as moot, *supra*, the state and federal proceedings present identical parties and claims.  Moreover, they are occurring contemporaneously, satisfying the three identities—parties, claims, and time.  See IFC Interconsult, 438 F.3d at 306.  Having determined that the federal action presents no parties or issues not under consideration in the state-court action, the Court will consider the factors relevant to the exceptional circumstances test.

The first two factors are not present here.  First, neither the state court nor the federal court has assumed jurisdiction over property.  Second, the federal forum in Philadelphia would not greatly inconvenience either party, as it is located approximately thirty-five miles from the state courthouse.

With respect to the third factor, in Colorado River, a federal statute clearly expressed a policy of "avoidance of piecemeal litigation of water rights in a river system."  424 U.S. at 819–20.  Applying Colorado River, the Third Circuit has held that "the 'avoidance of piecemeal litigation' factor is met . . . only when there is evidence of a strong federal policy that all claims should be tried in the state courts."  Ryan, 115 F.3d at 197–98 (citation omitted).  In the instant case, there is no such "strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review."  Id. at 198 (emphasis in original) (citation omitted).  Moreover, all of plaintiffs' claims could be resolved in either the state or the federal forum.  The possibility of concurrent state and federal litigation alone is not sufficient to satisfy the avoidance of piecemeal litigation factor.  Id.

The fourth factor—the order in which the courts obtained jurisdiction—weighs lightly in

favor of dismissal.  In Moses Cone, the Supreme Court held that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  460 U.S. at 21.  In the instant case, plaintiffs filed their state-court Complaint before their federal Complaint.  The state-court proceedings have progressed slightly further, with a denial of plaintiffs' request for emergency relief that is currently under appeal.

"[T]he presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction]."  Moses Cone, 460 U.S. at 25.  While the instant cases raises questions of state law, plaintiffs also assert claims under, *inter alia*, the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Thus, the fifth factor—which forum's substantive law controls—counsels against abstention.

The Pennsylvania court will protect the parties' rights substantively and procedurally as it is fully competent to adjudicate plaintiffs' state and federal claims.  As such, the sixth factor does not weigh against abstention.

In balancing the six factors, the Moses Cone Court emphasized that the "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the *surrender* of that jurisdiction."  460 U.S. at 25–26 (emphasis in original).  Nothing in the instant case constitutes the "exceptional circumstances" that would warrant abstention under Colorado River and Moses Cone.

D.     __Pullman__ Abstention

1.     **Standard of Review**

In Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 501 (1941), the Supreme Court developed "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wide discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." Pullman abstention has developed into a "well-established procedure . . . aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system." Harrison v. NAACP, 360 U.S. 167, 176 (1959).  Describing Pullman abstention, the Supreme Court has written that "no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." Id. (internal citations omitted).  Pullman abstention "serves the policy of comity inherent in the doctrine of abstention; and it spares the courts of unnecessary constitutional adjudication." Id. (internal citations omitted).

A district court may abstain under Pullman when it encounters an unsettled issue of state law, and resolution of the issue by a state court might eliminate or narrow the need to decide a federal constitutional issue.  See Pullman, 312 U.S. at 501–02; Chez Sez III Corp. v. Twp. of Union, 945 F.2d 628, 631 (3d Cir. 1991).  "[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the

23

possibility of unnecessarily deciding a constitutional question." Harris County Comm'rs Ct. v.

Moore, 420 U.S. 77, 83 (1975).  Courts abstain under Pullman where the federal constitutional

issues are "entangled in a skein of state law that must be untangled before the federal case can

proceed," id. at 85 (internal quotation marks omitted), such that federal court would be "making

a tentative answer which may be displaced tomorrow by a state adjudication." Pullman, 312 U.S.

at 500 (citations omitted).

The Third Circuit has ruled that three "special circumstances" must exist for a court to

abstain under Pullman:

> (1) Uncertain issues of state law underlying the federal constitutional claims brought in
> federal court;
> (2) State law issues amenable to a state court interpretation that would obviate the need
> for, or substantially narrow, the scope of adjudication of the constitutional claims;
> (3) A federal court's erroneous construction of state law would be disruptive of important
> state policies.

Chez Sez III, 945 F.2d at 631 (citing D'Iorio v. County of Delaware, 592 F.2d 681, 686 (3d Cir.

1978), overruled on other grounds, Kershner v. Mazurkiewicz, 670 F.2d 440, 448 (3d Cir. 1982)

(en banc)).  Moreover, "[i]f the district court finds that all three of the 'special circumstances' are

present, it must then make a discretionary determination as to whether abstention is in fact

appropriate under the circumstances of the particular case, based on the weight of these criteria

and other relevant factors." Id.

### 2.    Discussion

In ACS Enterprises, Inc. v. Comcast Cablevision of Philadelphia, L.P., No. 93-2076,

1994 WL 185046, at *5 (E.D. Pa. May 12, 1994) (DuBois, J.),  with respect to the first Chez Sez

III factor, this Court found that issues of state law are deemed uncertain where (1) "there is a

federal constitutional challenge to a statute which in is unclear on its face and is susceptible to a

construction by a state court that would avoid or modify the need to reach a federal question" or

(2) "where the uncertain status of state law stems from the 'unsettled relationship between the

state constitution and a statute.'"  Id. (internal citations omitted).  This Court also cited with

approval Santa Fe Land Improvement Company v. City of Chula Vista, 596 F.2d 838, 840 (9th

Cir. 1979).  In Santa Fe, the court found that Pullman abstention was appropriate where it was

unclear whether a city zoning ordinance exceeded the authority of the city under a state enabling

statute—an "unsettled relationship" between a state statute and a municipal ordinance.  Id.  In a

case involving a state ordinance, as does the instant case, the Southern District of Florida

enumerated three ways in which a question concerning a state ordinance may be unsettled for

purposes of Pullman abstention:

> First, the ordinance itself may be ambiguous. . . . Second, if it is clear that some discrete
> parts of the ordinance are unconstitutional, but that these parts can be severed from the
> remainder of the ordinance without destroying its coherence, then the Court must await
> the State court's decision whether to make such severance or not.  Finally, if it is not clear
> whether the ordinance is invalid under other state law, the Court must await the State's
> application of that other law to the ordinance.

Int'l Eateries of Am., Inc. v. Bd. of County Comm'rs of Broward County, Fla., 838 F. Supp. 580,

582–83 (S.D. Fla. 1993) (internal citations omitted).

The instant case raises the issue identified in Santa Fe and the third condition referenced

in International Eateries—the claimed invalidity of an ordinance based on unclear state law.  In

their Complaint, plaintiffs allege that defendant East Goshen Township, in enacting the

Resolution and Ordinance at issue, violated Pennsylvania's Donated or Dedicated Property Act

("Donated Property Act"), 53 P.S. §§ 3381–3386.  (Compl. ¶ 62.)  In particular, plaintiffs allege

that the acts of East Goshen Township violated 53 P.S. § 3384 by failing to apply to "Orphans

Court for approval to convert the open spaces and park lands in question to a different purpose

from that which was intended and envisioned in the deeds of conveyance, formally dedicating

open space park land for use and enjoyment by the residents of East Goshen Township."  (Id.)

The provision at issue, 53 P.S. § 3384, reads, in relevant part:

> When, in the opinion of the political subdivision which is the trustee, the continuation of
> the original use of the particular property held in trust as a public facility is no longer
> practicable or possible and has ceased to serve the public interest, . . . the trustee may
> apply to the orphans' court of the county in which it is located for appropriate relief.

Pennsylvania state courts have held that if a political subdivision fails to petition the

orphans' court as required under section 3384, then residents can "proceed in equity to determine

whether the Township has failed in its duty [to maintain the public facility in accordance with the

terms of the dedication] . . . ."  White v. Twp. of Upper St. Clair, 799 A.2d 188, 200 (Pa.

Commw. Ct. 2002).  Moreover, "[i]t is within the Township's discretion to seek court approval

or not.  If it does not, it runs the risk of being the target of an equity action brought to enforce a

dedication . . . ."  Id.

While plaintiffs thus have standing to enforce the terms of the Donated Property Act, no

Pennsylvania court has yet ruled on the question of whether allowing hunting violates the

dedication of land as a public park.  In Owens v. Borough of Hawley, 35 Pa. D. & C.2d 531,

534–35 (Pa. Ct. Com. Pl. 1951), the court enumerated facilities consistent with the dedication of

land as a public park:  "Bandstands, tennis courts, baseball fields, municipal auditoriums, free

public libraries, restaurants, eating stands and amusement devices are all for the convenience,

entertainment and pleasure of the public."  The Supreme Court of Pennsylvania has also

26

delineated some appropriate uses of public parkland: "[T]he erection within [the park's] borders of monuments, museums, art galleries, public libraries, zoological and botanical gradens, conservatories, and the like, is commonly recognized and accepted as being within the normal scope and ambit of public park purposes, and an open-air public auditorium comes within the same category . . . ."  Bernstein v. City of Pittsburgh, 77 A.2d 452, 455 (Pa. 1951).

In Borough of Ridgway v. Grant, 425 A.2d 1168, 1171 (Pa. Commw. Ct. 1981), the court established a test for determining what structures and activities are consistent with the purposes of a public park.  The court reasoned that "a public park may provide for pleasure, recreation and amusement in many forms" and that the proposed use should be evaluated with these values in mind.  Id.  Applying this test, the court held that "[t]he inherently unpredictable and intrusive nature of a fire engine house is hardly conducive to a restful atmosphere nor to the safety and welfare of small children who are the most frequent users of the park."  Id.

While the Borough of Ridgway test provides some guidance, the question of whether hunting is consistent with the dedication of public parkland for the use and enjoyment of residents is an unsettled question of state law.  The Donated Property Act is unclear on its face as to whether a municipality must petition the Orphans' Court to allow hunting on public parkland, and no state court has ruled on the issue.  Thus, the Court concludes that the relationship between the enactments of East Goshen Township and Pennsylvania law is sufficiently unsettled to satisfy the first prong of Chez Sez III, 945 F.2d at 631.

With respect to the second prong of Chez Sez III, the state court's resolution of the unsettled question of state law presented by plaintiffs would eliminate the need for, or substantially narrow the scope of, this Court's constitutional ruling.  Id.  Plaintiffs' claims that

provisions of the Initiative violate the United States Constitution need not be decided if the
process of enacting the Initiative violated Pennsylvania state law.  If East Goshen Township was
required to petition the Orphans' Court prior to allowing hunting in public parks, the Regulation
and Ordinance could be struck down by the Pennsylvania state court regardless of any alleged
constitutional infirmities.  In sum, whether this Court need reach the constitutional issues
presented is contingent upon the construction of the Donated Property Act, a task which should
initially be undertaken by the state court, further warranting abstention under Chez Sez III, 945
F.2d at 631.

As to the third prong of Chez Sez III, the Court concludes that "erroneous construction"
of the Donated Property Act in this matter "would be disruptive of important state policies"
related to state authority to regulate hunting and manage the deer population.  945 F.2d at 631.
There is a considerable body of precedent holding that states have important interests in
regulating land and resource use within their borders and that this is primarily a state and local,
not a federal, concern.  See, e.g., Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S.
172, 204 (1999); Cape May Greene, Inc. v. Warren, 698 F.2d 179, 187 n.9 (3d Cir. 1983)
(citation omitted).  Accordingly, the Court finds that the state's authority to regulate hunting and
the uses of public parkland constitutes an important state policy.

In view of the presence of all three Chez Sez III factors, under the circumstances
presented, this Court will exercise its discretion to abstain under Pullman from construing the
"skein of state law that must be untangled" before determining the constitutionality of the
provisions of the Initiative that are challenged by plaintiffs.  Harris County, 420 U.S. at 88.

Plaintiffs argue that, as they raise First Amendment claims, abstention is inappropriate in

the instant case.  (Pls.' Mem. of Law 5–9 (Doc. No. 16, filed Dec. 2, 2008).)  While the Supreme

Court has held that abstention is disfavored in the First Amendment context, the concerns

animating those decisions are not present here.  See City of Houston, Texas v. Hill, 482 U.S. 451,

467 (1987) ("[W]e have been particularly reluctant to abstain in cases involving facial challenges

based on the First Amendment.").[2]  The two Supreme Court cases that established this principle

concerned First Amendment challenges to allegedly vague coercive state statutes.  See Baggett v.

Bullitt, 377 U.S. 360, 361 (1964) (challenging Washington statutes requiring teachers and state

employees, as a condition of employment, to take loyalty oaths); Dombrowski v. Pfister, 380

U.S. 479, 482 (1965) (challenging Louisiana Subversive Activities and Communist Control Law,

a criminal statute regulating expression).  The Baggett and the Dombrowski Courts found

abstention inappropriate primarily because, given the nature of the challenged statutes, "[i]t [was]

fictional to believe that anything less than extensive adjudications, under the impact of a variety

of factual situations, would bring the [challenged statute] within the bounds of permissible

constitutional activity."  Baggett, 377 U.S. at 378; see also Dombrowski, 380 U.S. at 490–91.  In

the context of a criminal prosecution, the state court could not reach the "authoritative

construction" needed to ensure that the "area of proscribed conduct will be adequately defined

and the deterrent effect of the statute contained within constitutional limits . . . ."  Dombrowski,

380 U.S. at 490.

_____

[2] The City of Houston Court's reluctance to abstain because the case involved First
Amendment issues was arguably dicta.  The Court found abstention inappropriate because the
ordinance at issue was unambiguous; thus, the state court could not propose a limiting
construction that would avoid the constitutional issues.  City of Houston, 482 U.S. at 468–69.  As
the ordinance was clear on its face and an interpretation by the state court could not avoid or
modify the constitutional rulings, abstention was unwarranted.  Id.

In <u>Babbitt v. United Farm Workers National Union</u>, 442 U.S. 289, 308 (1979), the Supreme Court held that the district court should have abstained under <u>Pullman</u> despite the First Amendment challenge.  Citing <u>Baggett</u>, the Court recognized that "when 'extensive adjudications, under the impact of a variety of factual situations [would be required in order to bring a challenged statute] within the bounds of permissible constitutional certainty,' abstention may be inappropriate."  <u>Babbitt</u>, 442 U.S. at 308 (citing <u>Baggett</u>, 377 U.S. at 378). Distinguishing the situation presented from that in <u>Baggett</u>, the Court held that abstention was necessary because "here the Arizona courts may determine [the unclear issue of state law] in a single proceeding . . . . Accordingly, we think the Arizona courts should be 'afforded a reasonable opportunity to pass upon' the section under review."  <u>Id.</u> (citing <u>Harrison v. NAACP</u>, 360 U.S. 167, 176 (1959)).  The instant case resembles <u>Babbitt</u> rather than <u>Baggett</u> in that the Pennsylvania court can resolve the meaning of the Donated Property Act "in a single proceeding" and need not examine "a variety of factual situations."  In sum, the Supreme Court has concluded that even a facial First Amendment challenge does not automatically render abstention inappropriate.  Instead, a district court must carefully examine the nature of the unclear state law, the details of the First Amendment challenge, and the definitiveness of the resolution that a state court could reach.

Cases in the Third Circuit reinforce this distinction.  Even in the context of a First Amendment challenge, abstention is proper "[w]here the state courts can, in a single proceeding, determine the bounds of the state statute by choosing between one or several alternative meanings . . . ."  <u>Chez Sez III</u>, 945 F.2d at 634 (citing <u>Babbitt</u>, 442 U.S. at 308).  Based on this rationale, the Third Circuit has distinguished facial from as-applied First Amendment challenges,

holding that while abstention is generally inappropriate for the former, no such restriction applies for the latter.  See id.; Presbytery of New Jersey of the Orthodox Presbyterian Church v. Whitman, 99 F.3d 101, 107 (3d Cir. 1996).  In as-applied challenges, the state court can reach a definitive resolution to the unclear question of state law in a single proceeding, rendering abstention appropriate based on comity.

While the instant case presents a facial First Amendment challenge, the same principle animating the Third Circuit's decisions to abstain in the as-applied cases obtains here.  In a single proceeding, the state court may reach a conclusive determination as to the unsettled meaning of the Donated Property Act.  As the First Amendment issue is not entangled with the unclear question of state law, the state court need not conduct "extensive adjudications, under the impact of a variety of factual situations" to resolve the First Amendment issue.  Under the aforementioned authority, the Court concludes that abstention under Pullman to allow the Pennsylvania state courts to interpret the Donated Property Act is both appropriate and essential to "avoid[] unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system."  Harrison, 360 U.S. at 176.  In light of the Court's decision to abstain under Pullman, the Court declines to rule on the other issues raised by the parties' filings, including, *inter alia*, preclusion, standing, and Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs' Motion for Emergency Temporary Restraining Order against defendant East Goshen Township is also denied as moot.

### 3.     **Pullman Abstention Procedure**

By abstaining under Pullman, the Court does not abdicate its responsibility to adjudicate the federal issues potentially presented.  See England v. Louisiana State Bd. of Med. Exam'rs,

31

375 U.S. 411, 415 (1964) ("There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims.").  Instead, the Court merely postpones such adjudication until a state court determines whether the Donated Property Act required East Goshen Township to petition the Orphans' Court before allowing hunting on its public parkland.  Id. at 415–16; Georgevich v. Strauss, 772 F.2d 1078, 1094 n.21 (3d Cir.1985) (citing England, 375 U.S. at 415–16).  Under England, plaintiffs may preserve their right to have their federal claims adjudicated before this Court by first raising only their state-law issues before the state court, expressly reserving the right to adjudicate such issues in this Court, if necessary, and then returning to this Court for adjudication of any federal claims still remaining after the state-court proceedings.  375 U.S. at 421–22.  In compliance with the procedure dictated by Pullman and England, this Court will retain jurisdiction over the federal claims pending a state-court determination of the underlying state issues.

Although neither Pullman nor England expressly holds that a district court should vacate its stay under these circumstances, the Court will exercise its discretion to vacate the stay if the state court dismisses plaintiffs' state-law claims without construing the Donated Property Act, and plaintiffs demonstrate that they have exhausted their ability to have this issue adjudicated in state court.  Both England and other authorities support this Court's discretion to vacate its stay under such circumstances—i.e., where the state court refuses to adjudicate the underlying state issues upon which Pullman abstention was based.  England, 375 U.S. at 422 n.12 ("[I]f the state court has declined to decide the state question because of the litigant's refusal to submit without

32

reservation the federal question as well, the District Court will have no alternative but to vacate its order of abstention."); 17A Charles Alan Wright et al., Federal Practice and Procedure: Jurisdiction 3d § 4243, at 377–78 (3d ed. 2007) (noting that where state court refuses to adjudicate only state claims under England as part of prohibition against rendering advisory opinions, "the federal court is required to vacate its stay and decide all of the issues").

## V.    CONCLUSION

For all of the foregoing reasons, the Court grants judicial defendants' Motion to Dismiss. The Court abstains from further adjudication of the claims and remedies in Counts I through VII of plaintiffs' Complaint against defendant East Goshen Township and that defendant's Motion to Dismiss pending a state-court determination on the question of whether hunting is consistent with the dedication of land as a public park under Pennsylvania's Donated or Dedicated Property Act.  Pursuant to England, 375 U.S. at 421–22, plaintiffs may reserve their right to have their federal claims adjudicated in this Court by raising only their state-law issues before the state court, expressly reserving the right to adjudicate their federal issues in this Court, if necessary, and then returning to this Court for adjudication of any federal claims still remaining after the state-court proceedings.  In the event that the state court dismisses plaintiffs' state claims without ruling on the unclear question of state law and plaintiffs demonstrate that they have exhausted their ability to have the issue adjudicated in state court, plaintiffs will be permitted to present this issue to this Court for consideration of the federal constitutional questions raised in the Complaint.  The Court also denies Plaintiffs' Motion for Emergency Temporary Restraining Order as moot.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCIA GORDON and ROBERT CORCORAN,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | **NO. 08-4682** |
| | : | |
| **EAST GOSHEN TOWNSHIP, JUDGE** | : | |
| **HOWARD F. RILEY, JR., Individually** | : | |
| **and in Official Capacity as Chester County** | : | |
| **(PA) Common Pleas Court Judge, and** | : | |
| **MARGARET M. YOKEMICK,** | : | |
| **Individually, and in Official Capacity as** | : | |
| **Chester County (PA) Common Pleas** | : | |
| **Court Administrator,** | : | |
| **Defendants.** | : | |

**DuBOIS, J.**                                                                  **JANUARY 13, 2009**

### O R D E R

AND NOW, this 13th day of January, 2009, upon consideration of Plaintiffs' Motion for

Emergency Temporary Restraining Order (Document No. 2, filed September 29, 2008);

Response of Defendant East Goshen Township to Motion for a Temporary Restraining Order and

Motion to Dismiss Plaintiffs' Request for a Permanent Injunction (Document No. 9, filed

October 29, 2008); Judicial Defendants' Response to Plaintiffs' Motion for a Temporary

Restraining Order/Request for a Permanent Injunction and Judicial Defendants' Motion to

Dismiss Plaintiffs' Complaint (Document Nos. 12 and 13, filed November 14, 2008); Plaintiffs'

Response to Motion to Dismiss by Judicial Defendants (Document No. 15, filed December 2,

2008); Plaintiffs' Memorandum of Law on Rooker-Feldman Jurisdiction and Pullman Abstention

(Document No. 16, filed December 2, 2008); and Defendant East Goshen Township's Response

to Plaintiffs' Memorandum of Law on the Applicability of Rooker-Feldman Jurisdiction and

Pullman Abstention Doctrines (Document No. 19, filed December 10, 2008), for the reasons

stated in the attached Memorandum, **IT IS ORDERED** as follows:

1.     Judicial defendants' Motion to Dismiss is **GRANTED**.  Count VIII—the sole cause of

action against judicial defendants—is **DISMISSED AS MOOT**.

2.     The Court **ABSTAINS** from exercising jurisdiction at this time over Counts I through

VII—the surviving causes of action against defendant East Goshen Township—under

Railroad Commission of Texas v. Pullman Company, 312 U.S. 496 (1941).

3.     The action with respect to the surviving claims and remedies in Counts I through VII is

**STAYED** pending a determination in the courts of the Commonwealth of Pennsylvania

as to whether under Pennsylvania's Donated or Dedicated Property Act, 53 P.S.

§§ 3381–3386, allowing hunting violates the dedication of land as a public park.  Under

England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 421–22 (1964),

plaintiffs may reserve their federal issues for litigation in this Court by raising only their

state-law issues before the state court, expressly reserving the right to adjudicate their

federal issues in this Court, if necessary, and then returning to this Court for adjudication

of any federal claims still remaining after the state-court proceedings.  Plaintiffs may

move to vacate this Court's stay in the event that (a) the state court rules on this question,

and federal adjudication is warranted by the facts and the outcome of the state-court

proceeding; or (b) the state court dismisses plaintiffs' state claims without resolution of

this question, and plaintiffs demonstrate that they have exhausted their ability to have this

question adjudicated in state court.

4.     Defendant East Goshen Township's Motion to Dismiss Plaintiffs' Request for a

Permanent Injunction is **STAYED**.

5.      Plaintiffs' Motion for Emergency Temporary Restraining Order is **DENIED AS MOOT**.

6.      The case shall be **TRANSFERRED** to the Civil Suspense File by the Clerk of Court.

7.      The Clerk of Court shall **MARK** the case **CLOSED FOR STATISTICAL PURPOSES**.

8.      The Court shall **RETAIN** jurisdiction over the case, and the case shall be **RETURNED** to the Court's active docket when there are no impediments to further proceedings and the case may proceed to final disposition.

9.      The parties, through counsel, shall file and serve joint written status reports at four-month intervals or more frequently if warranted by the circumstances.  One copy of each status report shall be served on the Court (Chambers, Room 12613) when the original is filed.


                    **BY THE COURT:**


                    **/s/ Honorable Jan E. DuBois**
                          **JAN E. DUBOIS, J.**